**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) CR 06-130-PHX-JAT |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Jose Alfredo Romero-Sanchez, | ) |
| Defendant. | ) |

Pending before the Court is Defendant's Motion to Dismiss the indictment. The Motion is premised on the theory that Defendant's prior deportation violated due process, therefore, that deportation cannot not form the basis for this prosecution for illegal reentry after deportation. Defendant's argument is primarily based on the Supreme Court case of *INS v. St. Cyr*, 533 U.S. 289 (2001).

**Factual background**

Defendant was a lawful permanent resident of the United States with more than seven years of residency before 1994. In 1994, Defendant was convicted of a felony. In 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act and the Illegal Immigration and Immigrant Responsibility Act (IIRAIRA). Before 1996, an alien, who had been a lawful permanent resident of the United States with more than seven years of residency before the alien's conviction, would be eligible for discretionary relief from removal under section 212(c) of the Immigration and Nationality Act (8 U.S.C. § 1182(c))

under certain circumstances. After 1996, no discretionary relief was available to aliens who had been convicted of an aggravated felony as defined in the 1996 acts. In this case, the felony of which Defendant was convicted qualifies as an aggravated felony under the 1996 definitions.

Defendant was deported in 1999. In 2001, in *St. Cyr*, the Supreme Court held that the 1996 acts, which denied discretionary relief under § 212(c) for aggravated felons, could not be applied retroactively to people who pled guilty before 1996. 533 U.S. at 326. In this case, Defendant argues that in his prior deportation, the 1996 changes in the law were wrongfully applied to him (under *St. Cyr*) because his plea was before 1996; and, that he should be permitted to collaterally attack his prior deportation on this basis.

**Is relief under *St. Cyr* available to cases on collateral attack?**

*St. Cyr* was a case decided in the context of a habeas attack of the BIA's final deportation order against Mr. St. Cyr. *Id*. at 293. This case is a collateral challenge to a deportation order in a subsequent prosecution for illegal reentry after deportation. The Government argues that *St. Cyr* is not retroactively applicable to cases that are not a direct challenge to the deportation order.

The Government argues that a court following existing precedent at the time a decision is made is appropriate. *See Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1172-73 (9th Cir. 2001). The Government goes on to argue that to challenge such precedent, the defendant must take a direct appeal. *Id.* Additionally, the Government notes that the Immigration Judge is not required to advise the defendant of a potential constitutional challenge that might be available on direct appeal. *United States v. Garza-Sanchez*, 217 F.3d 806, 810-11 (9th Cir 2000).

In *Alvarenga-Villalobos*, the Court applied a *Teague*[1] analysis to determine whether the case of *Magana-Pizano v. INS*, 200 F.3d 603 (9th Cir. 1999) was available on collateral

---

[1] *Teague v. Lane*, 489 U.S. 288, 307 (1989) (plurality) (there is a "general rule of nonretroactivity for cases on collateral review.").

1 attack in the context of a subsequent petition for writ of habeas corpus. 271 F.3d at 1170, 1172-73. The Court concluded that *Magana-Pizano* would not be applied retroactively to cases on collateral review. *Id*. at 1172-73. In this case, the Government argues that applying this same reasoning, this Court should not apply *St. Cyr* to this case, which is also a collateral attack.

Defendant argues that the Government's argument that this Court conduct a *Teague* analysis (or similar precedent) to conclude that *St. Cyr* is not retroactively applicable to cases on collateral attack is foreclosed by *United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004). In *Ubaldo-Figueroa*, the Court of Appeals did not hold that *St. Cyr* was available to cases on collateral attack. In fact, the Court did not address the issue under *Teague* or any other collateral review analysis. Nonetheless, the Court applied *St. Cyr* retroactively to a collateral attack in a subsequent prosecution for illegal reentry after deportation. *Id.* at 1050-51. Were this an issue of first impression, the Court might agree with the Government. Applying this precedent, however, the Court agrees with Defendant that in *Ubaldo-Figueroa* (and other prior cases applying *St. Cyr*) the Court of Appeals has de facto determined that *St. Cyr* is available to defendants who are collaterally attacking their prior deportations in a subsequent prosecution for illegal reentry after deportation.

**Can Defendant meet all three required elements to collaterally attack his prior deportation?**

To bring a collateral attack, Defendant must show that he exhausted his administrative remedies in the prior deportation process. 8 U.S.C. § 1326(d)(1).[2] Then a defendant must show: 1) that his due process rights were violated by defects in the deportation proceeding; and 2) that he suffered prejudice as a result of the defects. *U.S. v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). With respect to this second prong, to show prejudice, the defendant must show that he had a plausible ground for receiving relief from deportation. *Id.*

---

[2] At oral argument, Defendant argued that this prong was unconstitutional. Because neither party briefed this issue, the Court declines to address it, and presumes the law is constitutionally valid.

- 3 -

**Exhaustion of Administrative Remedies and Due Process Violation**

Under *Arrieta*, a due process violation occurs when Defendant does not make a "considered and intelligent" waiver of his right to appeal. *Id.* Defendant argues that under *Ubaldo-Figueroa*, when the due process violation is the failure to have a considered and intelligent waiver of the right to appeal, the defendant also did not have a considered and intelligent choice in failing to exhaust his administrative remedies. 364 F.3d at 1050. The Court agrees with Defendant that under *Ubaldo-Figueroa*, the Court compresses the prongs of exhausting administrative remedies and a due process violation when the theory of a due process violation is defendant's alleged failure to make a considered and intelligent waiver of his right to appeal. *See also United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001). Thus, the Court will consider whether, in this case, Defendant's failure to appeal and failure to exhaust his administrative remedies were considered and intelligent.

Defendant notes that an Immigration Judge has a duty to advise an alien of his or her rights and to develop the record. *See Jacinto v. INS*, 208 F.3d 725, 733 (9th Cir. 2000). The Government does not dispute this law, but notes that the Immigration Judge does not have a duty to advise the alien that he or she could bring a constitutional challenge to the law the Immigration Judge is applying to the case. *United States v. Garza-Sanchez*, 217 F.3d 806, 810-11 (9th Cir. 2000) (specifically holding that the Immigration Judge did not have to advise Defendant of potential relief under § 212(c)[3]).

Additionally, the Government notes that a ruling that follows existing law a the time of the ruling is not a due process violation. *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1172-73 (9th Cir. 2001). Defendant does not dispute that the controlling law at the time of Defendant's deportation hearing was that the 1996 changes to the law, including the lack of relief of § 212(c) for aggravated felons, were retroactive. *See Matter of Soriano*, 21 I.&N.

---

[3] Section 212(c) of the Immigration and Nationality Act is found in the United States Code at 8.U.S.C. § 1182(c).

- 4 -

Dec. 516, 519 (BIA 1996)(overruling recognized by *Alvarenga-Villalobos*, 271 F. 3d at 1174.).

However, Defendant argues that regardless of this precedent, the most analogous case to these facts is *Ubaldo-Figueroa* and in that case, the Court of Appeals said that the failure of the Immigration Judge to advise the alien of potential discretionary relief under § 212(c) was sufficient to be a due process violation. The time line in *Ubaldo-Figueroa* is very similar to this case. Mr. Ubaldo-Figueroa was a lawful permanent resident of the United States with more than seven years of residency as of 1993. 364 F.3d at 1045-46. He pled guilty to a felony in 1993 that under the law of 1993 did not make Mr. Ubaldo-Figueroa deportable. *Id.* at 1046. In 1996, as discussed above, there was a change in the law and Mr. Ubaldo-Figueroa's prior conviction became an aggravated felony rendering him deportable. *Id.* In 1998, Mr. Ubaldo-Figueroa was deported. *Id.* at 1046-47.

Based on *Ubaldo-Figueroa*, the Court must agree with the Defendant that if the Immigration Judge failed to advise defendant of the possibility of relief under § 212(c) such failure would be a due process violation.[4] However, the remaining question in this case is

---

[4] Specifically, the Court held:
Ubaldo-Figueroa was eligible for a waiver from removal under former INA § 212(c). We do not consider an alien's waiver of his right to appeal his deportation order to be 'considered and intelligent' when the record contains an inference that the petitioner is eligible for relief from deportation, but the Immigration Judge fails to advise the alien of this possibility and give him the opportunity to develop the issue. The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is mandatory, and failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding. Thus, we hold that although Ubaldo-Figueroa did not exhaust his administrative remedies by appealing his removal order to the BIA in 1998, he is exempted from the exhaustion bar because his waiver of his right to appeal was not sufficiently 'considered and intelligent' under the Due Process Clause of the Fifth Amendment.
364 F.3d 1049-50 (internal citations and quotations omitted).

1 whether the record from the deportation proceeding shows that the Immigration Judge 2 advised Defendant of the potential for relief under § 212(c).

3 In the transcript from the deportation hearing, there is an extended discussion about 4 appeal and § 212(c) starting at page 128 and continuing through page 138. Ultimately, the 5 Immigration Judge concluded that under the Anti-Terrorism and Effective Death Penalty Act, 6 Defendant was not eligible for relief under § 212(c). However, the Judge strongly 7 encouraged Defendant to make a record and appeal the decision. Specifically, the Judge 8 said:

> So, in order to complete the record I think you should do not only a 212(h) but a 212(c). I have already ruled under the Anti-Terrorism and Effective Death Penalty Act he isn't eligible for 212(c) but between now and when we get back to this case there may be a Circuit Court decision that further advises the Court. And, with respect to 212(h) we have *Matter of Yeung* that would appear to be on all point, on all fours with this case. But, nonetheless, I think it's important and you have asked for the opportunity and, in view of the lengthy time he has lived in the United States, some 24 years, I think he should be able to put all these applications clearly in the record. And, then if there is a disagreement with the Court's interpretation, take the matter on appeal and then see what a more important court has to say.

15 Transcript at 138.

16 Previously, on page 137, the Judge had encouraged Defendant to make a 212(c) 17 application. On a later date at a continuation of the deportation proceeding, at page 141, 18 again the Judge encouraged Defendant to look at the availability of relief under 212(c). And, 19 again, in a subsequent proceeding the Judge stated, "We have already talked about why 20 212(c) is not available. And, I understand that you are objecting to the Court's determination 21 with respect to 212(c) and certainly your point can be reserved for appellate action but the 22 Court, nonetheless, is making that ruling. And, you can litigate the unconstitutionality of the 23 various provisions in another forum but not before an Immigration Judge. The Immigration 24 Judge does not have that type of jurisdiction." Transcript at 151. Finally, in her ruling, the 25 Immigration Judge further discusses § 212(c) relief. Transcript at 156.

26 From this record, the Court cannot agree with Defendant that he was never advised 27 of the possibility of relief under § 212(c). The Immigration Judge discussed it at no less than 28 3 separate hearings spanning approximately 30 pages of transcript. The Judge encouraged

Defendant to make his record and appeal the decision; the Judge even advised Defendant that he could challenge the constitutionality of the amendments.

Thus, this case is very distinguishable from *Ubaldo-Figueroa* because in *Ubaldo-Figueroa* Defendant was not advised that he could appeal and not advised that relief might be possible under § 212(c). Conversely, in this case, Defendant was advised that he could appeal,[5] and given a full explanation of the state of § 212(c) and the potential that he could apply for relief and appeal a decision that denied him relief. Based on this record, the Court finds that Defendant in this case did not suffer a due process violation, unlike the defendant in *Ubaldo-Figueroa*, because this Defendant's appellate rights and the possibility of some relief from removal under § 212(c) were fully explained to him.

**Prejudice**

Because the Court has found that Defendant did not suffer a due process violation, Defendant cannot meet the test to allow a collateral attack of his prior deportation. Thus, the Court need not reach the next question of whether Defendant can show prejudice. However, both parties have spent considerable time briefing the issue of prejudice. Therefore, the Court will alternatively consider whether Defendant is barred from collaterally attacking his prior deportation because he cannot show prejudice.

---

[5] With respect to his right to appeal, in addition to the sections quoted above advising Defendant that he could appeal with respect to the decision on § 212(c), Defendant was also advised: "But, of course, anything that I find by way of a ruling and a determination of the law can always be appealed and there is always a chance that the Judge could be wrong. And if I am wrong, well they would say so in their decision on appeal but that's not a court hearing. That is a matter before the Board of Immigration Appeals and normally that's just handled through written findings. You can always ask to make an oral argument. Frequently people do not ask to make oral arguments. They just put their legal arguments before the more important court and ask the more important court to view those legal arguments without going and seeing them personally. They do not take testimony before the more important court. They only listen to legal arguments and they don't look at new evidence. They listen to legal arguments, changes in the law but they don't take letters of recommendation and they don't take witness testimony." Transcript at 133-34.

1  Defendant argues that he was prejudiced because the Immigration Judge's conclusion
2  regarding whether he was entitled to discretionary relief under § 212(c) was incorrect based
3  *St. Cyr,* which held that the 1996 changes in the law could not be applied retroactively to
4  defendants who pled guilty before the change in the law. *See generally INS v. St. Cyr*, 533
5  U.S. 289 (2001).

6  Defendant is correct that the Immigration Judge's ruling regarding whether he could
7  obtain relief under § 212(c) was incorrect based on the later holding in *St. Cyr.* However,
8  the Government is correct that as of 1997, when the Immigration Judge made her decision,
9  her decision was correct under the law at the time. *See Matter of Soriano*, 21 I.&N. Dec.
10 516, 519 (BIA 1996)(overruling recognized by *Alvarenga-Villalobos*, 271 F.3d 1169, 1174
11 (9th Cir. 2001)). Further, generally, the Government is correct that applying the law at the
12 time of the decision is not subject to collateral attack. *See generally*, *Alvarenga-Villalobos*,
13 271 F.3d at 1172-73. Conversely, Defendant is correct, that for purposes of a prejudice
14 analysis in the context of a collateral attack, the Court in *Ubaldo-Figueroa* concluded that
15 the entitlement to be considered for discretionary relief under § 212(c) can be a plausible
16 grounds for relief; and the failure of an Immigration Judge to give a Defendant such
17 consideration can show prejudice. 364 F.3d at 1050-51.

18 In *Ubaldo-Figueroa* the Court went on to conduct an extensive analysis of whether
19 Mr. Ubaldo-Figueroa would have received discretionary relief under § 212(c). *Id.* The Court
20 concluded that based on Mr. Ubaldo-Figueroa's circumstances, he had shown plausible
21 grounds for relief because it seemed likely he would have received the discretionary
22 withholding of removal under § 212(c) had he properly been given the opportunity to seek
23 such relief. *Id.* In this case, the Court must now consider whether Defendant has shown that
24 he had plausible grounds for relief.

25 Applying the law at the time of the deportation proceedings, in the Fifth Circuit
26 (Defendant was deported from Texas), it appears that even considering relief under § 212(c),
27 Defendant was not entitled to discretionary relief. As of 1993, when Defendant pled guilty,
28 aliens convicted of firearms offenses were not eligible for relief under § 212(c). *See*

- 8 -

1 *Rodriguez v. INS*, 9 F.3d 408, 413 (1993) (holding defendant, "ineligible to apply for section 212(c) relief because his conviction of possession of a sawed-off shotgun, a ground for deportation, is not also a waivable ground for exclusion under section 212(a)"); *Matter of Montenegro*, 20 I.&N. Dec. 603, 604-05 (BIA 1992) (holding that no relief is available under § 212(c) for an alien who was convicted of a firearm offense under 8 U.S.C. § 1251(a)(2)(C).)

In this case, Defendant was convicted of a firearm shooting and receipt of a stolen firearm. Transcript at 130. Therefore, even if Defendant could have obtained a § 212(c) waiver to address the "crimes of moral turpitude" aspect of what Defendant did, he would still have been deportable for the firearms offense, and § 212(c) would not have been a basis for relief from that reason for deportation.[6] However, Defendant argues that this conclusion does not end the inquiry.

Specifically, based on Ms. Maclay's affidavit,[7] which appears to be consistent with the proceedings before the Immigration Judge, Defendant argues that he could have received an adjustment of status under *Matter of Gabryelsky*, 20 I&N Dec. 750 (BIA 1993). Basically, once Defendant lost his green card under § 241 for his firearms offense, he would then be "moved" into § 212 exclusion proceedings, which do not forbid people with firearms offenses from getting green cards. *See* Maclay affidavit at 2. Then, Defendant could have had his status adjusted under § 245 because of his mother. *Id.* Once Defendant's status was adjusted, he could have had he two crimes of moral turpitude waived under § 212(c). *Id.*

At oral argument, the Government did not dispute that all of these adjustments and waivers were theoretically possible based on the pre-1996 law. However, the Government argued, and continued to argue in its response to Ms. Maclay's affidavit, that because of the

---

[6] In his Reply, Defendant disputes the Government's and the Immigration Judge's classification of him as having two crimes of moral turpitude. (*See* Response at 14 and Transcript at 128, 131). However, at oral argument, based on the affidavit of Suzannah Maclay, Defendant conceded that he had two crimes of moral turpitude.

[7] This affidavit can be found at Doc. #60.

- 9 -

1 intervening change in the law, Defendant was never simultaneously eligible for a § 245 2 adjustment and a § 212(c) waiver. In other words, because a § 245 adjustment must occur 3 first, in this case, by the time Defendant received his § 245 adjustment, the law had changed 4 and as an aggravated felon, Defendant could not receive a § 212(c) waiver.

5 Defendant does not dispute any of the Government's points. Instead, Defendant 6 argues that the premise of *St. Cyr* is that the 1996 change in the law cannot be applied 7 retroactively to people who pled guilty before 1996. Thus, Defendant concludes that because 8 he could have received the § 212(c) waiver before 1996, the fact that by the time he finished 9 his § 245 adjustment the 1996 law had gone into effect, which precluded the § 212(c) waiver, 10 cannot be held against him. In other words, the 1996 changes to the law cannot be 11 retroactively applied against him. Thus, Defendant concludes that he has shown plausible 12 grounds for relief, specifically, that applying the correct law he could have gotten the § 13 212(c) waiver.

14 The Government's response to the Maclay affidavit is that Defendant did not take the 15 necessary steps to be eligible for a § 245 adjustment until October 1996. Response at 4. The 16 Government then argues that by October 1996, the 1996 changes in the law made eligibility 17 for the § 212(c) waiver unavailable. *Id.* The Government makes this argument without 18 citing, discussing or distinguishing *Ubaldo-Figueroa*. 364 F.3d at 1050-51.

19 In *Ubaldo-Figueroa*, the Court held that aliens who, at the time they <u>pled</u> were not 20 eligible for § 212(c) relief (because at the time they pled their crime was not an aggravated 21 felony) could be eligible for § 212(c) relief once their crime was reclassified as an aggravated 22 felony. *Id.* In this case, it appears to be undisputed by the parties that Defendant's crime was 23 not an aggravated felony at the time he pled, but was made an aggravated felony by the 1996 24 changes in the law.[8] Further, it appears undisputed that it was only by this 1996 change in

25

---

26 [8] *Ubaldo-Figueroa* relies on *United States v. Leon-Paz*, 340 F.3d 1003 (9th Cir. 2003), 27 which distinguishes *United States v. Velasco-Medina*, 305 F.3d 839 (9th Cir. 2002). In *Leon-Paz*, the Government had argued that even at the time the defendant pled, *i.e.* before the 1996 28 change in the law, defendant could not have received a § 212(c) waiver. 340 F.3d at 1005-

- 10 -

the law that Defendant became ineligible for a § 212(c) waiver for his crimes of moral turpitude.

Thus, it would appear that this case is analogous to *Ubaldo-Figueroa* in that in *Ubaldo-Figueroa* the defendant could not receive the § 212(c) waiver because he was not a aggravated felon at the time of his plea because it was unnecessary, but the Court of Appeals made it available to him after the 1996 change in the law to fully carry out the Supreme Court's holding in *St. Cyr* that the 1996 changes could not be retroactive. In this case, while it is unclear whether Defendant could get a § 212(c) waiver at the time of his plea, he did not receive it at the time of his deportation because of the 1996 changes in the law. Thus, consistent with *Ubaldo-Figueroa*, and to fully carry out the Supreme Court's holding in *St. Cyr* that the changes not be retroactive, Defendant would have to be given the benefit of the § 212(c) waiver that was made unavailable only by the 1996 change in the law.

Thus, based on the conclusion that Defendant should have been given the benefit of the § 212(c) waiver as of the time of his deportation, the Government is mistaken that Defendant was never simultaneously eligible for a § 245 adjustment and a § 212(c) waiver. Thus, because the Defendant "plausibly" could have received these two forms of relief from deportation, the Court finds the Defendant can meet the prejudice prong for a collateral attack

---

06. However, the Court of Appeals found this unavailing because the reason defendant was ineligible for that waiver at the time of the plea was because he was not an aggravated felon and, therefore, did not need the waiver. *Id.* In this case, neither party discussed whether, at the time of his plea, Defendant could have received a § 212(c) waiver. However, it appears undisputed that before the 1996 changes, Defendant could have received the § 212(c) waiver for his crimes of moral turpitude, which would seem to make this case more analogous to *Leon-Paz* than *Velasco-Medina*. (In *Velasco-Medina*, the Court held that when defendant pled guilty in June of 1996 the Anti-Terrorism and Effective Death Penalty Act had already gone into effect removing § 212(c) relief for aggravated felons. 305 F.3d 849. Thus, although Mr. Velasco-Medina, like Mr. Leon-Paz, was not eligible for § 212(c) at the time of his plea because they both were not aggravated felons until IIRAIRA redefined the term, the Court found their cases distinguishable because Mr. Velasco-Medina knew at the time he plead that if he was ever reclassified as an aggravated felon, he would be ineligible for § 212(c) relief because the Anti-Terrorism and Effective Death Penalty Act had already been enacted.)

on a prior deportation. However, Defendant's attempted collateral attack nonetheless fails because he cannot show a due process violation as discussed above.

**Conclusion**

While the Court agrees that *St. Cyr* is available to collateral attacks on deportation, the Court finds that Defendant in this case cannot succeed on his collateral attack because he cannot show a due process violation. Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss the indictment (Doc. #39) is denied.

DATED this 27th day of June, 2006.

James A. Teilborg
United States District Judge